# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WISCONSIN

THE TOWERS, LLC,

               Plaintiff,

v.

VILLAGE OF CURTISS,

               Defendant.

Case No.: 3:25-cv-00821

## COMPLAINT FOR EXPEDITED REVIEW OF THE ADMINISTRATIVE RECORD UNDER 47 U.S.C. § 332(c)(7)(B)(v)

## WHAT THIS CASE IS ABOUT

1.     This is an action for review on the administrative record—on an "expedited basis"—under the Telecommunications Act of 1996. 47 U.S.C. § 332(c)(7)(B)(v).

2.     Plaintiff The Towers, LLC seeks relief from the Village of Curtiss's unlawful denial of The Towers's application for a conditional use permit to construct a necessary communications tower in the Village.

3.     The Village's denial violates the federal Telecommunications Act of 1996: it was not supported by substantial evidence and effectively prohibits the provision of personal wireless service.

4.     The Village's denial also violates Wisconsin state law because it was arbitrary, unreasonable, contrary to law, and unsupported by substantial evidence.

5.     The Towers seeks declaratory, injunctive, and mandamus relief and requests that the Court order the Village to approve The Towers's application and grant all necessary permits for installation of the proposed communications tower.

## REQUEST FOR EXPEDITED REVIEW

6.     The Towers requests expedited review of this action under 47 U.S.C. § 332(c)(7)(B)(v), in which Congress directed that "court[s] shall hear and decide [actions under the Telecommunications Act of 1996] on an expedited basis."

7.     As this is a case to be decided based on the administrative record without discovery or factual development, the Court should expeditiously order the Village to file the administrative record and set a deadline for motions for summary judgment based on the administrative record.

## PARTIES

8.    Plaintiff The Towers, LLC is a Delaware limited liability company authorized to do business in the State of Wisconsin, with a principal address of 22 W. Atlantic Ave., Suite 310, Delray Beach, FL 33444.

9.    Defendant Village of Curtiss, Wisconsin is a municipal corporation existing under the laws of the State of Wisconsin with an address of P.O. Box 97, 915 Meridian Street, Curtiss, WI 54422.

## JURISDICTION AND VENUE

10.    This Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1331 because it concerns federal questions arising under the Telecommunications Act, 47 U.S.C. § 151 et seq., and specifically 47 U.S.C. § 332(c).

11.    This Court has supplemental jurisdiction over the state-law claim under 28 U.S.C. § 1367 because the claim is part of the same case or controversy as the federal questions before the Court. *See City of Chi. v. Int'l Coll. of Surgeons*, 522 U.S. 156 (1997).

12.    This Court has personal jurisdiction over the Village because it is a governmental body located in the State of Wisconsin.

13.    Venue is proper under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to this action occurred in Clark County, Wisconsin, which is located in this judicial district.

## BACKGROUND

14.    In the Telecommunications Act of 1996, Congress made it national policy to "make available, so far as possible, to all people of the Unites States, without

discrimination . . . a rapid, efficient, nation-wide, and world-wide wire and radio communication service with adequate facilities at reasonable charges, for the purpose of national defense, [and] for the purpose of promoting safety of life and property through the use of wire and radio communications." 47 U.S.C. § 151.

15.     Bringing this policy to life, federally licensed wireless communications carriers provide wireless communications services to local businesses, public safety entities, and the general public in Wisconsin and throughout the country.

16.     To provide these services, carriers must create and maintain a network of digital "cell sites" each of which consists of antennas and related electronic communications equipment designed to send and receive radio communications signals.

17.     Coverage from cell sites must overlap in a grid pattern resembling a honeycomb. If a wireless communications carrier cannot construct a cell site within a specific geographic area, it will not be able to provide acceptable service to its consumers within that area.

18.     Engineers from the carriers use sophisticated, industry-standard computer programs and extensive field testing to complete a propagation study, which shows where cell sites need to be located in order to provide service. The propagation study also considers the topography of the land, the coverage boundaries of neighboring cell sites and other factors. For a wireless network to perform well, cell sites must be located, constructed and operated so reliable coverage can be achieved. Only when the entire wireless network is operational will a mobile user have reliable

service, and uninterrupted and optimal communications throughout a given territory. If there is no functioning cell site within a given area, there will be no mobile wireless service for customers within that area, or in the alternative, mobile customers who travel into that area will experience an unacceptable level of mobile wireless service.

19.    The carriers don't do all this by themselves. They often work with entities like The Towers to develop, construct, and manage their necessary telecommunications infrastructure, including, among other things, communications towers (often referred to as "cell towers").

20.    The siting of communications towers is governed by a mix of local, state, and federal law.

21.    At the local level, the Village of Curtiss Zoning Ordinance regulates the siting of communications towers in the Village. *See* Vill. of Curtiss, Wis., Zoning Ord., https://bit.ly/46xTklo.

22.    Under the Zoning Ordinance, "[t]ransmitting towers, receiving towers, relay and microwave towers" and related facilities are conditional uses in the C-2 Commercial District, meaning a conditional use permit is required. *Id.* § 4.09(D)(7). The process for obtaining a conditional use permit, in turn, is set forth in section 9.04.

23.    At the state level, Wisconsin Statutes section 66.0404 further governs the siting of communications towers (known in the statute as "mobile service support structures"). That statute "preempts some, but not all, local control" over communications tower siting. *Savich v. Columbia Cnty. Bd. of Adjustment*, 2024 WI App 43, ¶ 43, 413 Wis. 2d 140, 11 N.W.3d 160. A village may regulate the "siting and

construction of a new" tower and related equipment "only as provided in" the statute. *See id.* § 66.0404(2)(a), (h)–(i). The statute expressly prohibits local governments from denying a permit for a communications tower based on certain reasons. *Id.* § 66.0404(4).

24.     In addition, Wisconsin Statutes section 62.23(7)(de)1.b. further governs conditional use permits.

25.     At the federal level, the Telecommunications Act requires that "[a]ny decision by a State or local government or instrumentality thereof to deny a request to place, construct, or modify personal wireless service facilities shall be in writing and supported by substantial evidence contained in a written record." 47 U.S.C. § 332(c)(7)(B)(iii). A local government's statement of written reasons for denial must be provided at essentially the same time the government communicates its denial. *T-Mobile South, LLC v. City of Roswell*, 574 U.S. 293, 300–305 (2015). In addition, a local government's "regulation of the placement [and] construction of" communications towers "shall not prohibit or have the effect of prohibiting the provision of personal wireless services." *Id.* § 332(c)(7)(B)(i).

26.     Over the past several months, The Towers has worked with a wireless communications carrier to address the need for a new cell site in the Village to support the carrier's wireless network.

27.     The Towers spent substantial time, effort, and money to identify a location that could accommodate a new communications tower in the Village. The Towers selected a location for a new communications tower after a careful vetting process.

28.     The Towers engaged Ramaker and Associates, an engineering firm, to support The Towers in preparing an application for approval.

29.     The Towers submitted a complete application to the Village for a conditional use permit to construct a communications tower in the Village on parcel number 111.0115.000, at 226 W. Matthias St., Curtiss, WI 54422 (the Application). The Application was dated June 11, 2025, and was deemed complete on June 23. A true and correct copy of the Application is attached as **Exhibit A**.

30.     Based on the results of a radiofrequency compliance pre-construction evaluation performed for the proposed communications tower site, the site will be compliant with FCC Guidelines. The Federal Aviation Administration has also cleared the proposed tower for development.

31.     The proposed tower is located within the Village's C-2 commercial zoning district. Under the Zoning Ordinance, "[t]ransmitting towers, receiving towers, relay and microwave towers" and related facilities are conditional uses in the C-2 district, meaning a conditional use permit is required. Vill. of Curtiss, Wis., Zoning Code § 4.09(D)(7).

32.     The process for obtaining a conditional use permit, in turn, is set forth in section 9.04. Under that section, a "request for a conditional use grant shall be submitted in writing to the Village Clerk." *Id.* § 9.04(B). Then the Village Planning Commission reviews the application and ultimately makes a recommendation to the Village Board. *Id.* § 9.04(C)–(D). Ultimately, the Village Board decides whether to grant or deny a conditional use permit. *Id.* § 9.04(E)–(F).

33.    On July 28, 2025, the Planning Commission recommended denial of the Application. A true and correct copy of the Commission's written recommendation is attached as **Exhibit B**.

34.    On August 25, 2025, counsel for The Towers sent a letter to the Village regarding the Planning Commission's recommendation. A true and correct copy of that letter is attached as **Exhibit C**.

35.    On September 2, 2025, the Village Board held a public hearing on the Application. The Towers presented the Application and addressed questions from members of the Village Board.

36.    On September 8, 2025, the Village Board adopted a resolution denying the Application. A true and correct copy of that denial is attached as **Exhibit D**.

37.    Although the Village's denial was "in writing," it was not "supported by substantial evidence contained in a written record" and thus violates federal law. 47 U.S.C. § 332(c)(7)(B)(iii). It also has "the effect of prohibiting the provision of personal wireless services" in the Village, further violating federal law. *Id.* § 332(c)(7)(B)(i). And it is contrary to Wisconsin state law.

## FIRST CLAIM FOR RELIEF
### Violation of 47 U.S.C. § 332(c)(7)(B)
### (Lack of Substantial Evidence in Written Record)

38.    The Towers restates and incorporates by reference the allegations above.

39.    The Telecommunications Act requires that "[a]ny decision by a State or local government or instrumentality thereof to deny a request to place, construct, or

8

modify personal wireless service facilities shall be in writing and supported by sub-stantial evidence contained in a written record." 47 U.S.C. § 332(c)(7)(B)(iii).

40.     A local government's statement of written reasons for denial must be provided at essentially the same time the government communicates its denial. *City of Roswell*, 574 U.S. at 300–305.

41.     "[D]enials subject to the [Telecommunications Act] are reviewed . . . more closely than other types of zoning decisions to which federal courts generally accord great deference." *Orange Cnty.-Poughkeepsie Ltd. P'ship v. Town of E. Fishkill*, 84 F. Supp. 3d 274, 295 (S.D.N.Y.), *aff'd sub nom. Orange Cnty.--Cnty. Poughkeepsie Ltd. P'ship v. Town of E. Fishkill*, 632 F. App'x 1 (2d Cir. 2015) (quoting *Sprint Spectrum L.P. v. Willoth*, 176 F.3d 630, 637 (2d Cir. 1999)). "The phrase 'substantial evidence contained in a written record' is the traditional standard used for judicial review of agency actions." *City of Rancho Palos Verdes v. Abrams*, 544 U.S. 113, 128 (2005) (Breyer, J., concurring) (quoting H.R. Conf. Rep. No. 104–458, at 208, U.S. Code Cong. & Admin. News 1996, pp. 124, 222–23).

42.     Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Universal Camera v. NLRB*, 340 U.S. 474, 477 (1951) (internal quotations omitted). Although not necessarily a preponderance, "more than a scintilla of evidence" is required. *Cellular Tel. Co. v. Town of Oyster Bay*, 166 F.3d 490, 494 (2d Cir. 1999). "[C]ritical findings" must find "record support." *Orchard Hill Bldg. Co. v. U.S. Army Corps of Eng'rs*, 893 F.3d 1017, 1027 (7th Cir. 2018). And the decisionmaker must articulate a satisfactory

explanation for its action, including a rational connection between the facts found and the choice made. *See id.* at 1024, 1027.

43. On September 8, 2025, the Village issued a written decision (in the form of a resolution) denying the Application. *See* Ex. D.

44. Although the Village's denial was "in writing," it was not "supported by substantial evidence contained in a written record" and thus violates federal law. 47 U.S.C. § 332(c)(7)(B)(iii).

45. *First*, the decision states that the Village is denying the Application "due to the growing evidence that the operation of cell broadcasting equipment within certain proximity of general population results in directly correlatable discomfort, increased health issues, and consequently increased safety risks." Ex. D at 2. In that regard, the decision refers to the Village Planning Commission's determination that the proposed tower would be contrary to the public health, safety, or general welfare. *Id.* (The decision does not refer to any evidence or support *other* than the Planning Commission's recommendation.) But nothing in the Planning Commission's recommendation supports denial based on substantial evidence. Under a bullet point entitled "Public Health and/or General Wellbeing Risk," the recommendation lists internet articles and a video supposedly showing that "[r]adiation from cell towers" causes cancer and other "negative health effects." Ex. B at 1–4. But the Village cannot deny the Application based on concerns about the health or environmental effects of radiofrequency emissions from the proposed tower. *E.g.*, 47 U.S.C. § 332(c)(7)(B)(iv); *T-Mobile Ne. LLC v. Loudoun Cnty. Bd. of Sup'rs*, 748 F.3d 185, 191–95 (4th Cir. 2014);

*Oyster Bay*, 166 F.3d at 494 n.3; *AT&T Wireless Servs. of Cal. LLC v. City of Carlsbad*, 308 F. Supp. 2d 1148, 1159–63 (S.D. Cal. 2003).

46.    *Second*, the decision refers to the Planning Commission's determination that "the proposed use has a record of causing adverse property value in some situations." Ex. D at 2. (The decision does not refer to any evidence or support *other* than the Planning Commission's recommendation.) But nothing in the Planning Commission's recommendation supports denial based on substantial evidence. As supposed support for the notion that property values would be reduced, the recommendation links to internet sources as "examples of information showing value impacts." Ex. B at 4. But neither source has anything to do with the *particular proposed tower* or the *particular proposed location*. The first is generalized; the second is specific to Orlando, Florida. Neither source provides even a scintilla of evidence that the proposed tower will affect property values at the proposed location.

47.    *Third*, the decision contains other statements. But none is supported by substantial evidence. All are conclusory, irrelevant, or both. The Village's "conclusory statements" do not constitute substantial evidence, even though they quote and cite to the Comprehensive Plan. *NMSURF, Inc. v. State of N.M. Dep't of Transp.*, 2021 WL 2646754, at *5–*6 (D.N.M. June 28, 2021). "Merely repeating an ordinance . . . does not constitute substantial evidence." *Mobile Cent., LLC v. Charter Twp. of W. Bloomfield*, 691 F.3d 794, 801 (6th Cir. 2012); *see Orchard Hill*, 893 F.3d at 1027 (reversing denial for lack of substantial evidence, where agency failed to "substantiate its say-so [and] . . . explain why it matters"); *Rauenhorst*, 95 F.3d at 719 (stating

11

that administrative action is unlawful if the decisionmaker fails to "articulate a sat-
isfactory explanation for its action including a rational connection between the facts
found and the choice made").

48.     *Fourth*, the decision states that it "accept[s]" and "adopt[s]" the Planning
Commission's recommendation. Ex. D at 2. Apart from that discussed above, the
Planning Commission's recommendation is otherwise unsupported by substantial ev-
idence. To start, the recommendation's fleeting references to the fire station and med-
ical helicopter landing are conclusory and, in their own words, not evidence (*e.g.*,
"Further investigation on this topic was not pursued . . . ."). Ex. B at 4. In addition,
the recommendation also states that the Commission "finds that a distance of at least
1,640 feet is needed between a cell broadcaster station and buildings that are de-
signed for continuous occupancy in order to fulfill the requirements of the general
standards set for CUPs in the zoning ordinance as it pertains to public health" and
"general wellbeing." Ex. B at 4–5. Again, these findings—based on concerns about
environmental and health effects of the proposed tower—cannot be used to support
denial. Separately, the Commission offered no rational connection between any evi-
dence it reviewed and its specific finding that a 1640-foot separation distance was
required. *See Orchard Hill*, 893 F.3d at 1027.

49.     Not only is the Village's denial decision unsupported by evidence, but it
also "run[s] counter to the evidence" that is available. *Motor Vehicle Mfr. Ass'n of
U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). Indeed, The Tow-
ers submitted significant evidence with its Application, all of which supports

approval. Neither the Village's denial decision nor the Planning Commission's recommendation confronts it. *See Genuine Parts Co. v. EPA*, 890 F.3d 304, 312 (D.C. Cir. 2018) ("[A]n agency cannot ignore evidence that undercuts its judgment" and cannot "rely on a 'clipped view of the record.'" (citation omitted)).

50.     The Towers has been, or will imminently be, subject to irreparable injury by the Village's violation of law. The denial "cannot be compensated after the fact by monetary damages." *NMSURF*, 2021 WL 2646754, at *7 (citing *Abrams*, 544 U.S. at 122–23); *accord Extenet Sys., LLC v. Vill. of Kings Point*, 2022 WL 1749200, at *12–*13 (E.D.N.Y. May 31, 2022), *aff'd sub nom. Extenet Sys., LLC v. Vill. of Kings Point*, 2023 WL 4044076 (2d Cir. June 16, 2023). Indeed, "allowing the denial to stand would be inconsistent with the policies underlying the 1996 Act—i.e., insuring the speedy deployment of wireless services to the public which undoubtedly benefits from such technology." *Sprint Spectrum, L.P. v. Mills*, 65 F. Supp. 2d 148, 160–61 (S.D.N.Y. 1999) (finding policy of Telecommunications Act relevant to irreparable harm).

51.     Accordingly, The Towers seeks a declaration that the Village violated the Telecommunications Act, as well as injunctive or mandamus relief remedying that violation by ordering the Village to grant the Application and issue the conditional use permit. When a local government violates the Telecommunications Act, "courts have held that the appropriate remedy is an order to issue the relevant permit" and that "no useful purpose would be served by remanding for further proceedings." *Primeco Pers. Commc'ns v. City of Mequon*, 242 F. Supp. 2d 567, 582 (E.D. Wis. 2003), *aff'd sub nom. PrimeCo*, 352 F.3d 1147; *see Cellco P'ship d/b/a Verizon*

*Wireless v. City of Milwaukee*, No. 23-CV-1581-BHL, 2024 WL 329001, at *10–11 (E.D. Wis. Jan. 29, 2024). "Where the review of the record demonstrates that the denial was not based upon substantial evidence, the court will not hesitate to direct the issuance of all necessary permits." *Bell Atl. Mobile of Rochester L.P. v. Town of Irondequoit, N.Y.*, 848 F. Supp. 2d 391, 402–03 (W.D.N.Y. 2012); *see also, e.g.*, *Loudoun Cnty.*, 748 F.3d at 195–96; *Green Mountain Realty Corp. v. Leonard*, 750 F.3d 30, 41 (1st Cir. 2014) ("[I]n the majority of cases the proper remedy for a zoning board decision that violates the Act will be an order . . . instructing the board to authorize construction" (citation omitted)).

**SECOND CLAIM FOR RELIEF**
**State-Law Judicial Review**

52. The Towers restates and incorporates by reference the allegations above.

53. If a village denies a permit, it must proceed on a correct theory of law, act reasonably and non-arbitrarily, and support its decision with substantial evidence. *See Hartland Sportsmen's Club, Inc. v. City of Delafield*, 2020 WI App 44, ¶ 4 n.1, 393 Wis. 2d 496, 947 N.W.2d 214. Indeed, review of a permit denial can be had by common-law certiorari. *See also* Wis. Stat. § 66.0404(2)(f). A court reviews a municipality's decision to determine: "(1) whether the municipality kept within its jurisdiction; (2) whether it proceeded on a correct theory of law; (3) whether its action was arbitrary, oppressive, or unreasonable and represented its will and not its judgment; and (4) whether the evidence was such that it might reasonably make the order or

determination in question." *Hartland Sportsmen's Club*, 2020 WI App 44, ¶ 4 n.1 (citing *Ottman v. Town of Primrose*, 2011 WI 18, ¶ 35, 332 Wis. 2d 3, 796 N.W.2d 411).

54.    The Village's denial is not supported by substantial evidence, as explained above.

55.    Not only is the denial unsupported by any evidence, but it also "run[s] counter to the evidence" that is available. *Preston v. Meriter Hosp., Inc.*, 2008 WI App 25, ¶ 36, 307 Wis. 2d 704, 747 N.W.2d 173 (quoting *State Farm*, 463 U.S. at 43). That means the denials were arbitrary in violation of state law. *Id.*; *see Hartland Sportsmen's Club*, 2020 WI App 44, ¶ 4 n.1.

56.    In addition to the grounds identified above, the Village's denial was also contrary to law and arbitrary because the denial ran headlong into Wisconsin statutory law in multiple ways.

57.    *First*, the Village could not lawfully rely on the Planning Commission's "find[ing] that a distance of at least 1,640 feet is needed between a cell broadcaster station and buildings that are designed for continuous occupancy in order to fulfill the requirements of the general standards set for CUPs in the zoning ordinance as it pertains to public health" and "general wellbeing." Ex. B at 4–5. "[B]uildings that are designed for continuous occupancy" are particular locations, and Wisconsin Statutes section 66.0404(4)(c) forbids a village from "[e]nact[ing] an ordinance prohibiting the placement of a mobile service support structure in particular locations within the political subdivision." *See Savich*, 2024 WI App 43, ¶¶ 57–74.

58.    *Second*, the Village's denial violates Wisconsin Statutes section 62.23(7)(de). That section, which governs conditional use permits, provides that a city's or village's "decision to approve or deny the permit must be supported by substantial evidence." Wis. Stat. § 62.23(7)(de)2.b. "Substantial evidence," in turn, is defined to mean "facts and information, other than merely personal preferences or speculation, directly pertaining to the requirements and conditions an applicant must meet to obtain a conditional use permit and that reasonable persons would accept in support of a conclusion." *Id.* § 62.23(7)(de)1.b. Under the Zoning Ordinance, the Planning Commission must consider whether the proposed use "would be substantially adverse to property value *in the neighborhood affected*." Vill. of Curtiss, Wis., Zoning Ord. § 9.04(F)(2) (emphasis added). The only "facts and information" cited by Planning Commission related to property value have nothing to do with "property value in the neighborhood affected." Thus, those "facts and information" do not "directly pertaining to the requirements and conditions an applicant must meet to obtain a conditional use permit."

## THIRD CLAIM FOR RELIEF
### Violation of 47 U.S.C. § 332(c)(7)(B)
### (Effective Prohibition)

59.    The Towers restates and incorporates by reference the allegations above.

60.    The Telecommunications Act provides that a local government "shall not prohibit or have the effect of prohibiting the provision of personal wireless services." 47 U.S.C. § 332(c)(7)(B)(i)(II).

61.     Local government action "constitutes an effective prohibition if it materially limits or inhibits the ability of any competitor or potential competitor to compete in a fair and balanced legal and regulatory environment." *In the Matter of Accelerating Wireless Broadband Deployment by Removing Barriers to Infrastructure Inv.*, 33 F.C.C. Rcd. 9088, ¶ 35 (2018). An effective prohibition includes materially limiting or inhibiting a provider's efforts to "ent[er] . . . in[to] a particular area," "densify[ ] a wireless network, introduc[e] new services[,] or otherwise improv[e] service capabilities." *Id.* ¶ 37.

62.     The City's denial of the Application materially inhibits The Towers's efforts to "densify" a "wireless network" and "otherwise improv[e] service capabilities." FCC Order ¶ 37.

63.     By relying on the Planning Commission's "find[ing] that a distance of at least 1,640 feet is needed between a cell broadcaster station and buildings that are designed for continuous occupancy in order to fulfill the requirements of the general standards set for CUPs in the zoning ordinance as it pertains to public health" and "general wellbeing," Ex. B at 4–5, the Village effectively prohibited all new communications towers within the Village.

64.     Indeed, there is *no location* in the Village that is at least 1640 feet from a building designed for continuous occupancy.

## PRAYER FOR RELIEF

WHEREFORE, The Towers respectfully requests that the Court:

A.      Conduct expedited review and disposition of this action under 47 U.S.C.

§ 332(c)(7)(B)(v), including by promptly issuing a scheduling order for expedited brief-

ing on the administrative record;

B.      Order the Village to promptly file with this Court a true, full, and com-

plete copy of the administrative record accompanying the denial of The Towers's per-

mit application;

C.      Declare that the Village's denial of the Application violated 47 U.S.C.

§ 332(c)(7)(B);

D.      Declare that the Village's denial of the Application violated state law;

E.      Permanently enjoin the Village to approve the Application and to grant

all necessary permits for construction and operation of the facilities proposed in that

Application;

F.      Issue a writ of mandamus directing the Village to discharge all relevant

duties to approve the Application and to grant and issue all necessary permits for

construction and operation of the facilities proposed in that Application;

G.      Award costs and fees, including attorneys' fees, as may be available un-

der law; and

H.      Award such other and further relief as the Court deems just and proper.

Dated: October 3, 2025

/s/ Joseph S. Diedrich
Joseph S. Diedrich
James C. Remington
HUSCH BLACKWELL LLP
511 North Broadway, Suite 1100
Milwaukee, WI 53202
(414) 273-2100
joseph.diedrich@huschblackwell.com
jake.remington@huschblackwell.com

*Counsel to Plaintiff*