IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

THE TOWERS, LLC,

Plaintiff,

v.

VILLAGE OF CURTISS,

Defendant.

OPINION and ORDER

25-cv-821-jdp

Plaintiff The Towers, LLC applied for a conditional-use permit to build a telecommunications tower in the Village of Curtiss, which denied the application. The Towers brings federal claims under the Telecommunications Act and state-law claims under Wisconsin's mobile-tower-siting law, contending that the Village's decision is not supported by substantial evidence. The Towers seeks declaratory and injunctive relief, and it asks the court to issue a writ of mandamus directing the Village to grant its application.

The court agrees that the Village's decision is not supported by substantial evidence. As the Village now concedes, a denial based on the purported health effects of cell-phone towers cannot stand. And the court concludes that the purported diminishment of property values is not supported by evidence specifically tied to the area of the proposed tower. The proper remedy is declaratory relief: The Towers's application is deemed approved as a matter of state law, and The Towers is entitled to proceed with the activity for which it sought approval in its application.

## BACKGROUND

The court draws the following facts from the record of the Village's action, Dkt. 13.

Non-party Verizon Wireless provides wireless service in the Village, but it wants to install a new telecommunications tower to improve its service in the area. Verizon hired The Towers to find property in the Village for the tower. In June 2025, The Towers applied for a conditional-use permit to site and build the tower at 226 West Matthias Street.

In the Village of Curtiss, conditional-use-permit applications are subject to two levels of review. First, the Village's Planning Commission reviews the applications and submits recommendations to the Village Board on whether to approve the applications. Second, the Board ultimately decides whether to approve the applications. The Village's zoning ordinance establishes standards for approving permit applications, two of which are at issue:

> 1. No grant of a special exception shall violate the spirit or intent of this Ordinance.
>
> 2. No special exception shall be allowed which could be contrary to the public health, safety or general welfare, or which would be substantially adverse to property value in the neighborhood affected.

Dkt. 13, at 95.[1] The ordinance requires both the Commission and the Board to apply these standards when reviewing conditional-use-permit applications.

In July 2025, the Commission voted to recommend that the Village Board deny The Towers's application. In the report accompanying its recommendation, the Commission stated that it "determined that Mobile cell towers are known to pose a public health and general wellbeing risk" and it "determined that significant impacts on land values have been documented in relation to cell tower proximity." *Id.* at 154, 157 (cleaned up). The Commission

[1] Citations to filings from the docket use the page numbers assigned by the court's electronic filing system, not the page numbers in the original document.

concluded that it could not recommend granting the permit because the proposed use posed a significant risk to health, general wellbeing, and property values.

In September 2025, the Village Board adopted a resolution that denied the application. The Village Board denied The Towers's application on three grounds. First, the Board concluded that The Towers's proposed use would violate the spirit of the Village's zoning ordinance. Second, the Board concluded that the proposed use could be contrary to public health, safety, or general welfare. Third, the Board determined that the proposed use would be substantially adverse to property value in the neighborhood affected.

The court will discuss additional facts as they become relevant to the analysis.

## ANALYSIS

The Telecommunications Act requires that "[a]ny decision by a State or local government or instrumentality thereof to deny a request to place, construct, or modify personal wireless service facilities shall be in writing and supported by substantial evidence contained in a written record." 47 U.S.C. § 332(c)(7)(B)(iii). Wisconsin's mobile-tower-siting law also requires that any decision to deny an application "include with the written notification substantial evidence which supports the decision." Wis. Stat. § 66.0404(2)(d)4.

There are two issues: (1) whether the Board's decision was supported by substantial evidence; and (2) if not, the proper remedy.

### A. Substantial evidence

The standard for substantial-evidence review under federal law is the same as the standard under Wisconsin law. Under federal law, a decision is supported by substantial evidence if the underlying record contains "such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion." *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938). In *Gateway City Transfer Co. v. Public Service Commission*, 253 Wis. 397, 34 N.W.2d 238, the Wisconsin Supreme Court adopted the federal-law version of the substantial-evidence standard for judicial review of administrative decisions under state law. 34 N.W.2d at 242. Because the substantial-evidence standard under federal and state law is the same, the court will analyze The Towers's federal and state-law claims together.

The Village Board denied The Towers's application because it concluded that the proposed use violated the Village's zoning ordinance in three ways. First, the Board concluded that the proposed use would violate the spirit of the Village's zoning ordinance because of the "growing evidence that the operation of cell broadcasting equipment within certain proximity of general population results in directly correlatable discomfort, increased health issues, and consequently increased safety risks." Dkt. 13, at 619. Second, the Board concluded that the proposed use would be contrary to the public health, safety, or general welfare because the Commission "has reviewed substantial evidence and documentation [supporting that conclusion] and has included examples in [its] report." *Id.* Third, the Board concluded that the proposed use would be substantially adverse to property value in the neighborhood affected because telecommunications towers "[have] a record of causing adverse property value in some situations." *Id.* The Board also "accept[ed]" the Commission's report and "adopt[ed] it in addition to the rationale contained in this resolution as the basis for the decision of the Village Board to disapprove the proposed conditional use permit." *Id.* at 621.

The Board's first and second grounds for denying The Towers's application are inconsistent with the law. Local governments may not regulate telecommunications towers "on the basis of the environmental effects of radio frequency emissions to the extent that such

facilities comply with the [Federal Communications Commission's] regulations concerning such emissions." 47 U.S.C. § 332(c)(7)(B)(iv); *see* Wis. Stat. § 66.0404(4)(a) (may not impose compliance measures for radio frequency emissions). This means that local governments may not deny applications to build telecommunications towers out of fear that electromagnetic radiation will cause adverse health effects. *See Helcher v. Dearborn Cnty.*, 595 F.3d 710, 723 (7th Cir. 2010); *Westel-Milwaukee Co., Inc. v. Walworth Cnty.*, 205 Wis. 2d 244, 251, 556 N.W.2d 107, 109–10 (Ct. App. 1996). The Board's first and second grounds for denying The Towers's application are based on health concerns so, as the Village concedes in its response, its "reason[s] for the denial based on the health concerns cannot stand." Dkt. 15, at 13.

That leaves the Board's third ground for denying The Towers's application, which was that the proposed use would diminish property values in the affected neighborhood. To support its conclusion, the Board stated that the Commission "reviewed evidence that showed that the proposed use has a record of causing adverse property value in some situations." Dkt. 13, at 619. In its report, the Commission cited two articles. *See id.* at 157. The first article, which was written by the advocacy group Preserve Orlando, states that "[r]esearch indicates that the proximity of a cell tower can have a substantial impact on property values, potentially exceeding [20 percent]." *Id.* at 486. In the article, Preserve Orlando cites studies discussing how telecommunications towers can affect property values in places around the world, including the English countryside. *Id.* at 487–88. The second article, which was written by the consulting firm Wireless Equity Group, states that "installing a cell tower on a residential property can have a significant impact to the property value." *Id.* at 576. In the article, Wireless Equity Group cites a study about Savannah, Georgia, which found that "homes close to towers sell for a discount of up to 7.6 [percent] and that any noticeable effect disappears at 1500 feet."

*Id.* at 576–77. The study also found that "the effect of a cell tower on residential property values during a declining market can drastically decrease the value while in an increasing market it could have little effect." *Id.* at 577.

The articles cited by the Commission discuss only generalized concerns about how telecommunications towers might affect property values based on studies of their effects in particular locales. They do not, however, address the specific impact that The Towers's proposed tower will have on the value of property near the proposed tower in the Village of Curtiss. Generalized concerns about how a tower might affect property values do not constitute substantial evidence. *See VoiceStream Minneapolis, Inc. v. St. Croix Cnty.*, No. 01-cv-504-bbc, 212 F. Supp. 2d 914, 933 (W.D. Wis. 2002), *aff'd*, 942 F.3d 818, 832 (7th Cir. 2003); *Cellular Tel. Co. v. Town of Oyster Bay*, 166 F.3d 490, 496 (2d Cir. 1999). It appears that the Board inferred from the articles cited by the Commission that The Towers's proposed tower might negatively affect the value of nearby properties, but that is conjecture, and conjecture is not substantial evidence. *Omnipoint Corp. v. Zoning Hearing Bd. of Pine Grove Twp.*, 181 F.3d 403, 409 (3d Cir. 1999).

The Village resists this conclusion, arguing that "the Village is in a catch-22: review the application timely or take longer to commission a particularized study as to the impact of the tower in this exact location." Dkt. 15, at 11. The court is not persuaded. Local governments need not conduct studies, collect data, or hire experts to satisfy the substantial-evidence standard, as several Wisconsin courts have held. *See Eco-Site, LLC v. Town of Cedarburg*, 2019 WI App 42, ¶ 27, 388 Wis. 2d 375, 933 N.W.2d 179 ("True, no one produced a large-scale, detailed analysis of the financial effect of the tower. But that is not needed given our standard of review."); *see also Richeson v. Town of Hortonia*, No. 2024AP700, 2025 WL 2650903,

at *10 (Wis. Ct. App. Sep. 16, 2025) (per curiam) ("[N]o professional studies were necessary."); *cf. Tri-Cnty. Paving Inc. v. Town of Dane Town Bd.*, No. 2024AP1730, 2026 WL 1983426, at *9–11 (Wis. Ct. App. July 9, 2026) (involving conditional-use permit for quarry).

Local governments satisfy the substantial-evidence standard without any specially commissioned study by providing other "evidence that is reasonably specific and tied to the locality." *Cellco P'ship v. City of Elkhart Bd. of Zoning Appeals*, 825 F. Supp. 3d 767, 787 (N.D. Ind. 2026). For example, in *American Tower LP v. City of Huntsville*, 295 F.3d 1203 (11th Cir. 2002), the Eleventh Circuit held that a decision was supported by substantial evidence when the local government heard testimony from a local realtor who testified that the proposed use "made it harder to sell houses in the neighborhood" and that "she had already lost potential buyers for her own property in the area because of the proposed tower." 295 F.3d at 1208. Consider also *Eco-Site, LLC v. Town of Cedarburg*, 2019 WI App 42, 388 Wis. 2d 375, 933 N.W.2d 179, in which the state court of appeals held that a decision was supported by substantial evidence when residents testified that the proposed tower would negatively affect their property values; for example, a developer testified that he had "lost a potential sale when the buyer learned of the tower." 2019 WI App 42, ¶¶ 17 n.6, 27.

The Village did not support its decision with reasonably specific evidence that was tied to the Village, so it did not satisfy the substantial-evidence standard.

**B. Remedy**

The Towers contends that that the Village's failure to support its denial with substantial evidence means that the court must order the Village to issue the conditional-use permit. *See* Dkt. 14, at 21–25. In contrast, the Village contends that the appropriate remedy is a remand to the Village Board for a rehearing on The Towers's application. *See* Dkt. 15, at 13–14.

Most courts addressing the remedy issue have held that the appropriate remedy under the Telecommunications Act is "injunctive relief in the form of an order to issue the relevant permits." *Cellular Tel. Co.*, 166 F.3d at 497. But some courts have held that remand might be an appropriate remedy in some circumstances, such as when a local government violates the Act's requirement that a denial by "in writing." *Cellco P'ship v. City of Elkhart Bd. of Zoning Appeals*, 765 F. Supp. 3d 763, 768–75 (N.D. Ind. 2025); *see also T-Mobile S., LLC v. City of Roswell*, 574 U.S. 293, 309 (2015) (Alito, J., concurring) ("[T]he ordinary rule in administrative law is that a court must remand errors to the agency . . . . Nothing we say today should be read to suggest that when a locality has erred, the inevitable remedy is that a tower must be built."). Regardless of the proper remedy under the Telecommunications Act, state law provides the relief that The Towers seeks.

Wisconsin's mobile-tower-siting law prescribes steps that a local government must take within 90 days of receiving a complete application to build a telecommunications tower. Under Wis. Stat. § 66.0404(2)(d), a local government must:

> 1. Review the application to determine whether it complies with all applicable aspects of the political subdivision's building code and, subject to the limitations in this section, zoning ordinances.
>
> 2. Make a final decision whether to approve or disapprove the application.
>
> 3. Notify the applicant, in writing, of its final decision.
>
> 4. If the decision is to disapprove the application, include with the written notification substantial evidence which supports the decision.

Wis. Stat. § 66.0404(2)(d). If a local government fails to take these steps before the deadline, the applicant "may consider the application approved." *Id.* Both sides agree that the Village reviewed The Towers's application, made a final decision, and notified The Towers of its

decision to deny the application within 90 days. The problem is that the Village's final decision denying the application did not include substantial evidence in support.

The state court of appeals decision in *State ex rel. United States Cellular Operating Company LLC v. Town of Fond du Lac*, 2025 WI App 21, 415 Wis. 2d 720, 19 N.W.3d 627, controls. In *Town of Fond du Lac*, the court of appeals held that the mobile-tower-siting law "clearly and unambiguously" requires local governments to take all the specified steps within 90-days of deeming an application to be complete. *Id.*, ¶ 28. The court also held that the law requires them to actually comply with the specified steps. *Id.*, ¶ 37. The court reasoned that allowing local governments to substantially comply with the steps rather than actually comply with them would "thwart the purpose of [the mobile-tower-siting law]," which is "for applicants to receive a timely written notice containing the substantial evidence and reasoning for the political subdivision's rejection of the application." *Id.*, ¶ 36. A local government's failure to comply with the requirements of the mobile-tower-siting law means that the application is "deemed approved by operation of law." *Id.* ¶ 47. The court reasoned that "[t]his can only mean that [the applicant is] therefore entitled to proceed with the activity for which it sought approval in its application." *Id.*, ¶ 46. The court also reasoned that the local government is not entitled to a "do-over" for its failure to comply with the mobile-tower-siting law. *Id.*, ¶ 47. Instead, the proper remedy is an order granting the applicant declaratory relief. *Id.*, ¶ 50.

The same result follows here. The Towers's application for a conditional-use permit to build a telecommunications tower in the Village of Curtiss, Dkt. 13, 101–53, was deemed approved by operation of state law upon the Village's failure to include with its written decision substantial evidence supporting the decision. Under *Town of Fond du Lac*, this means that the Village must issue to The Towers a conditional-use permit to site and build its proposed

telecommunications tower, and that The Towers is entitled to proceed with siting and building the tower. The court will grant The Towers's request for declaratory relief under Wisconsin law. The court's declaration should be adequate to provide The Towers the remedy to which it is entitled; the court sees no need to issue a separate injunction order or writ of mandamus against the village.

## ORDER

IT IS ORDERED that:

1. It is DECLARED that plaintiff The Towers, LLC's application for a conditional-use permit to site and build a telecommunications tower at 226 West Matthias Street in the Village of Curtiss is deemed approved by operation of Wis. Stat. § 66.0404(2)(d), because the Village did not include with its written decision substantial evidence supporting the decision within 90 days of its receipt of a complete application. The Towers is entitled to proceed with the activity for which it sought approval in its application.

2. The clerk of court is directed to enter judgment in favor of The Towers and close the case.

Entered August 31, 2026.

BY THE COURT:

/s/

JAMES D. PETERSON
District Judge